UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RAYMOND WILLIAMS, | ) |
| | ) |
| Movant, | ) |
| | ) |
| v. | ) No. 4:19-cv-2394-RWS |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM AND ORDER

Before me is Raymond Williams's motion to vacate, set aside, or correct sentence brought pursuant to 28 U.S.C. § 2255.  I will deny the motion for the reasons set forth below.

## BACKGROUND

Williams is the president of U.S. Technology Corporation ("UST"), an Ohio corporation that leases blasting materials for paint removal. United States v. U.S. Technology Corp., et al., 4:17-cr-189-RWS, [ECF No. 1]. UST's customers included U.S. military bases and agencies that used the blasting materials to remove paint from tanks, planes, and other objects. Id. at 1-2. The resulting powder-like remains contained heavy metals like cadmium, chromium, and lead. These remains were considered hazardous waste and thus subject to the regulations under the Resource

1

Conservation and Recovery Act. Id. at 2. As a result, customers had to send the remains to UST for safe disposal in accordance with the regulations.

In 2000, UST hired a recycling company, Hydromex, to dispose of the hazardous waste at Hydromex's facility in Yazoo City, Mississippi. Id. However, instead of properly disposing of the waste, Hydromex illegally dumped and buried the hazardous waste at the Yazoo City facility. Id. Because of this illegal dumping, in 2003, UST entered into an agreement with the Mississippi Department of Environmental Quality ("MDEQ"), promising to properly dispose of the hazardous waste itself within two years. Id.

Years later, after two amendments to the original agreement, UST had failed to dispose of the hazardous waste. [ECF No. 1-3 at 144-45]. In June 2013, UST and MDEQ signed a Second Amendment to Agreed Order ("Amendment"), allowing UST to recycle the material rather than process it at a hazardous waste treatment facility, subject to the conditions of the order. United States v. U.S. Technology Corp., et al., 4:17-cr-189-RWS, [ECF No. 1 at 3]. Per this agreement, UST's waste material could retain its recyclable status through December 2013 as long as UST complied with the provisions of the Amendment. As part of the Amendment, MDEQ approved an arrangement between UST and the Mississippi Department of Transportation ("MDOT") under which MDOT would use UST's waste as road base. [ECF No. 3 at 3]. All of the waste was supposed to be removed

from the Yazoo City site by December 31, 2013. However, in October 2013, MDOT informed Williams that it could no longer accept the waste due to lack of funding for the road project. [ECF No. 1-3 at 184].

In order to meet the December deadline, UST began working with Daryl Duncan and Penny Duncan, who agreed to receive UST's waste at their facility, Missouri Green Materials ("MGM"), in Berger, Missouri. United States v. U.S. Technology Corp., et al., 4:17-cr-189-RWS, [ECF No. 250 at 13]. MGM was never registered with the state of Missouri as a facility permitted to store or process either recyclable materials or hazardous waste. Id. at 13-15. UST began shipping its waste to MGM in October 2013. Id. at 13. Williams did not inform MDEQ that he was shipping the material to a facility not specified in the Amendment until November 18, 2013. [ECF No. 1-3 at 187]. Because he did not receive a response to that communication, Williams called MDEQ two weeks later to inform them of his progress. [ECF No. 1-3 at 192].  After this phone call, MDEQ ordered Williams to stop shipping the material to MGM since such shipment violated the Amendment that exempted the material from being classified as hazardous waste. [ECF No. 1-3 at 192]. Between October 2013 until he was directed to cease shipments in December 2013, Williams transported approximately nine million pounds of hazardous waste to Missouri. United States v. U.S. Technology Corp., et al., 4:17-cr-189-RWS, [ECF No. 250 at 13-15].

On June 19, 2018, Williams pled guilty to conspiracy to transport hazardous waste, in violation of 18 U.S.C. § 371. <u>United States v. U.S. Technology Corp., et al.</u>, 4:17-cr-189-RWS, [ECF No. 155]. I sentenced him to a five-year term of probation, restitution in the amount of $1,500,000.00, and a special assessment of $100. <u>United States v. U.S. Technology Corp., et al.</u>, 4:17-cr-189-RWS, [ECF No. 227]. On August 23, 2019, Williams filed a motion for post-conviction relief pursuant to 28 U.S.C. § 2255. [ECF No. 1]. Williams contends that his sentence should be vacated because he is actually innocent of the crime of conspiracy. He also raises an ineffective assistance of counsel claim. In the alternative, Williams requests an evidentiary hearing on these claims.

## **LEGAL STANDARD**

A motion to vacate, set aside, or correct a sentence requires the petitioner to show that his "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). In order to obtain relief under § 2255, the petitioner must establish a constitutional or federal statutory violation constituting "a fundamental defect which inherently results in a complete miscarriage of justice." <u>United States v. Gomez</u>, 326 F.3d 971, 974 (8th Cir. 2003) (quoting <u>United States v. Boone</u>, 869 F.2d 1089, 1091 n.4 (8th Cir. 1989)).

## ANALYSIS

### I.     Actual Innocence

The Supreme Court has not recognized "actual innocence" as a freestanding constitutional claim. McQuiggin v. Perkins, 569 U.S. 383, 384 (2013). Rather, a petitioner may argue actual innocence when raising procedurally defaulted claims on habeas review under the fundamental miscarriage of justice exception to the procedural bar. See Murray v. Carrier, 477 U.S. 478, 496 (1986). This exception is "'rare' and [to] be applied only in the 'extraordinary case,'" and is for that reason "explicitly tied…to the petitioner's innocence." Schlup v. Delo, 513 U.S. 298, 299 (1995). A petitioner challenging a guilty plea on this basis must demonstrate that "the constitutional error in his plea colloquy 'has probably resulted in the conviction of one who is actually innocent.'" Bousley v. United States, 523 U.S. 614, 623 (1998) (quoting Carrier, 477 U.S. at 496).

To satisfy the miscarriage of justice standard, the petitioner's claim of actual innocence must be both "credible" and "compelling." Schlup, 513 U.S. at 324-25. To be considered "credible," the claim must be supported by "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Id. at 324. The "new reliable evidence" must establish a new factual basis of innocence, not merely present a different legal argument. Bousley, 523 U.S. at 622. Factual

5

evidence is only "new" if was unavailable at the time of trial and could not have been produced through an exercise of due diligence. Kidd v. Norman, 651 F.3d 947, 952 (8th Cir. 2011). For the claim to be "compelling," the petitioner must demonstrate "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Schlup, 513 U.S. at 327.

Williams does not meet the standard because he merely asserts his innocence without presenting any new evidence in support of the claim. Wyldes v. Hundley, 69 F.3d 247, 254 (8th Cir. 1995). Williams's entire argument rests on testimony from a 2014 hearing in which he participated as a witness. Specifically, he points to one statement from Richard Harrell, MDEQ's Director of the Office of Pollution Control, who testified about the agreements between MDEQ and UST. During the hearing, defense counsel asked Harrell if UST's waste material was not considered hazardous waste in October 2013. Harrell replied that the material "was still exempt at that point in time." [ECF 1-3 at 144].

This evidence has been publicly available since 2014. It existed long before Williams accepted the plea agreement. While some other circuits hold that Schlup's "new reliable evidence" standard includes any evidence that was not presented at trial, regardless of whether that evidence was available at the time of trial, the Eighth Circuit does not. Kidd, 651 F.3d at 952. Thus, the evidence on

6

which Williams relies is not "new" for the purpose of bringing an actual innocence claim in this Court.

Even if the testimonial statement could somehow be considered new factual evidence, Williams still could not show that, based on that evidence, no reasonable juror would have found him guilty. Williams takes Harrell's words at the hearing out of context. While Harrell did state that the materials were exempt from hazardous classification through December 2013, he also explained that they were only exempt pursuant to the agreement that Williams had violated by shipping the materials elsewhere. [ECF 1-3 at 142-45]. Therefore, even if Harrell's testimony could be considered new, it hardly serves to exculpate Williams. It is reasonable to conclude that by shipping the materials in violation of the Amendment that he agreed to, Williams knowingly transported hazardous waste. Even if this testimonial evidence had been introduced, a jury still could have found Williams guilty.

Therefore, because his claim is neither credible nor compelling, I will deny Williams's claim based on actual innocence.

## II.     Ineffective Assistance of Counsel

A petitioner's ineffective assistance of counsel claim is properly raised under 28 U.S.C. § 2255 rather than on direct appeal. United States v. Cordy, 560

F.3d 808, 817 (8th Cir. 2009); United States v. Davis, 452 F.3d 991, 994 (8th Cir. 2006). The petitioner bears the burden of demonstrating ineffective assistance of counsel. United States v. Cronic, 466 U.S. 648, 658 (1984). Claims of ineffective assistance of counsel in the plea-bargaining context are governed by the two-part test set forth in Strickland v. Washington, 466 U.S. 668 (1984). Missouri v. Frye, 566 U.S. 134, 140 (2012); Hill v. Lockhart, 474 U.S. 52, 58 (1985). The petitioner must prove both that his counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's deficient performance, the petitioner would not have pled guilty and would have instead chosen to go to trial. Tinajero-Ortiz v. United States, 635 F.3d 1100, 1103 (8th Cir. 2011); Cheek v. United States, 858 F.2d 1330, 1336 (8th Cir. 1988). Both prongs of the test must be met to make a successful claim; if the petitioner cannot satisfy one, then the court need not consider the other. Fields v. United States, 201 F.3d 1025, 1027 (8th Cir. 2000).

Williams fails to satisfy either prong of the test. First, Williams has not shown that counsel failed to investigate the allegedly exculpatory testimonial evidence or that the choice not to investigate this evidence was unreasonable. Counsel has a duty to make reasonable investigations or to make reasonable decisions that render particular investigations unnecessary. Strickland, 466 U.S. at 690-91. To prove that counsel's performance fell below an objective standard of

reasonableness, the petitioner must show that counsel "failed to exercise the customary skills and diligence that a reasonably competent attorney would [have] exhibited under similar circumstances." United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996) (citing Strickland 466 U.S. at 690-91). However, reviewing courts must be highly deferential to counsel's decisions, "indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment." Bucklew v. Luebbers, 436 F.3d 1010, 1016 (8th Cir. 2006) (citing Strickland, 466 U.S. at 689). Counsel need not investigate every conceivable line of mitigating evidence, and the reasonableness of a choice not to investigate should be analyzed in light of all relevant circumstances. Couch v. Trickey, 892 F.2d 1338, 1344 (8th Cir. 1989). Choosing not to raise a meritless argument does not constitute ineffective assistance. Rodriguez v. United States, 17 F.3d 225, 226 (8th Cir. 1994); Larson v. United States, 905 F.2d 218, 219 (8th Cir. 1990).

Williams does not contend that counsel failed to investigate the testimonial evidence he now offers the Court. Rather, he simply concludes that the presented evidence is exculpatory, and thus counsel's failure to advise Williams based on this evidence falls outside the scope of reasonable representation. However, Williams's argument relies too heavily on a single testamentary statement taken out of context. Williams claims that Harrell's statement—that the material "was still exempt at that point in time"—meant that the material he transported was definitively not

9

hazardous waste when he transported it. However, during the same testimony, Harrell also stated that the material was only conditionally exempted by virtue of the agreements between UST and MDEQ, and that he reclassified the material as hazardous when Williams violated the Amendment. Williams disregards this fact and other contradictory evidence. Counsel knew that Williams violated the Amendment. Further, because Williams had entered into multiple agreements with MDEQ to provide exemption status for the material in exchange for its proper removal, counsel could have reasonably concluded that Williams knew his waste material would once again be considered hazardous if he chose to remove it in a manner that was not approved by the MDEQ. Under the circumstances, it is reasonable that counsel viewed Williams's current argument as meritless and thus chose not to raise it. Even if the argument had some merit, the weight of contradictory evidence does not rule out the plea agreement as a reasonable strategic choice—especially when great deference is given to that choice. Therefore, Williams has not met his burden to show that counsel's advice to enter a plea agreement fell below an objective standard of reasonableness.

Even if counsel's performance could be deemed deficient, Williams cannot show that he was prejudiced as a result. To establish Strickland prejudice in the context of a guilty plea, a petitioner must show a reasonable probability exists that, but for counsel's unprofessional errors, the petitioner would not have pled guilty

and instead would have proceeded to trial. Hill, 474 U.S. at 59. A petitioner can also establish prejudice by showing that the result of his sentencing would have been different but for counsel's errors. Apfel, 97 F.3d at 1077. If a petitioner merely offers speculation that he was prejudiced by counsel's failure to investigate, he has failed to establish ineffective assistance of counsel. Sanders v. Trickey, 875 F.2d 205, 210 (8th Cir. 1989). Counsel's decision not to investigate certain mitigating evidence does not satisfy Strickland's prejudice requirement when extensive contradictory evidence exists. Bainter v. Trickey, 932 F.2d 713, 716 (8th Cir. 1991). Thus, where the introduction of mitigating evidence is not likely to make the defendant's claim more successful, the defendant cannot show that counsel's deficient performance affected the outcome of the sentencing. Id.

Extensive contradictory evidence shows that Williams knowingly transported hazardous waste. Williams concedes that the Amendment he signed only conditionally exempted the material from a hazardous waste classification. When he shipped the material to MGM in violation of the Amendment, Williams was no longer in compliance with the terms that gave the waste its recyclable status. These facts starkly contradict the testimonial evidence that counsel allegedly failed to investigate. Therefore, the introduction of this testimonial evidence, even if it were mitigating, would not have created the reasonable probability of success necessary to show Strickland prejudice.

Furthermore, Williams makes no showing that had counsel reasonably investigated, he would not have pled guilty. See Hill, 474 at 59. Although Williams asserts that "the guilty plea should be treated as a nullity," he never states that he would have instead elected to go to trial.

Therefore, because Williams has not demonstrated that counsel's performance was deficient and that this deficiency prejudiced the outcome of the case, his claim of ineffective assistance of counsel is denied.

### III.   Evidentiary Hearing

An evidentiary hearing is not required in a § 2255 case "where the files and records of the case conclusively show that the petitioner is entitled to no relief." Cheek, 858 F.2d at 1333 (citing United States v. Gann, 807 F.2d 134, 135 (8th Cir. 1986), United States v. Walker, 638 F.2d 1147, 1150 (8th Cir. 1981)). Additionally, an evidentiary hearing is not warranted if the allegations merely contradict prior statements made by the petitioner in the guilty plea. United States v. Schmitz, 887 F.2d 843, 844 (8th Cir. 1989).

Regarding the actual innocence claim, the record clearly demonstrates that Williams has not produced new reliable evidence that was previously unavailable. Regarding the ineffective assistance of counsel claim, there is enough evidence in the record to show that counsel made reasonable strategic choices in his representation of Williams. Furthermore, the record shows that Williams would not

have been prejudiced had counsel made the alleged errors. Therefore, because no outside information is necessary for the court to decide Williams's § 2255 motion on either claim, an evidentiary hearing will not be held.

## **CONCLUSION**

After careful consideration of his claims, I find that Williams is not entitled to relief under § 2255.

Accordingly,

**IT IS HEREBY ORDERED** that Raymond Williams's Motion to Vacate, Correct, or Set Aside his sentence, [1] in Docket No. 4:19 CV 2394 RWS, is **DENIED**.

**IT IS FURTHER ORDERED** that no certificate of appealability shall be issued.

RODNEY W. SIPPEL  
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of October, 2020.